**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LAURIE ANN YOUNG, JACLYN
SWEDBERG, TIFFANY TOTH, MARIANA
DAVALOS, and ALANA CAMPOS,

                    Plaintiffs,

                   - against -

DIAMOND DOLLS, INC., d/b/a DIAMOND
DOLLS, and KEN RUBIN,

                   Defendants.

Case No.:  5:18-CV-294[TJM/ATB]

**COMPLAINT**

 (Jury Trial Demanded)

Plaintiffs LAURIE ANN YOUNG, JACLYN SWEDBERG, TIFFANY TOTH,

MARIANA DAVALOS, and ALANA CAMPOS (collectively, "Plaintiffs"), by and through

their undersigned counsel, as and for their Complaint ("Complaint") against defendants

DIAMOND DOLLS, INC., d/b/a DIAMOND DOLLS, and KEN RUBIN (collectively,

"Defendants"), respectfully allege as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendants' theft,

alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of

whom are world renowned professional models, in order to promote their strip club, Diamond

Dolls ("Diamond Dolls" or, the "Club"), located in Syracuse, New York.

2.      As detailed below, Defendants' theft and unauthorized use of Plaintiffs' images,

photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43

of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's

image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which

protects a person's right to privacy and publicity; and c) violation of New York's Deceptive

1

Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote the Club, via any medium.

**JURISDICTION & VENUE**

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant Diamond Dolls, Inc. ("Diamond Dolls, Inc."), is a corporation formed under the laws of the state of New York, with a principal place of business located at 6720 Townline Road, Syracuse, New York 13211.

7.      Upon information and belief, defendant Ken Rubin ("Rubin") is a resident of the State of New York, and at all relevant times was the owner, principal and/or chief executive Diamond Dolls, Inc.

8.      Venue is proper in the United States District Court for the Northern District of New York because Defendants' principal place of business is located within this District, a significant portion of the alleged causes of action arose and accrued in this District, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in this District.

## PARTIES

*Plaintiffs*

9.      Plaintiff Laurie Ann Young ("Young") is a well-known professional model, and a resident of Orange County, California.

10.     Plaintiff Jaclyn Swedberg ("Swedberg") is a well-known professional model, and a resident of Orange County, California.

11.     Plaintiff Tiffany Toth ("Toth") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Alana Campos ("Campos") is a well-known professional model, and a resident of Clark County, Nevada.

*Defendants*

14.     According to publicly available records, defendant Diamond Dolls, Inc. is corporation formed under the laws of the State of New York.  During times relevant to this action, Diamond Dolls, Inc. operated Diamond Dolls, a strip club located at 6720 Townline Road, Syracuse, New York.

15.     Rubin is identified by the New York Secretary of State as the Chief Executive Officer of Diamond Dolls, Inc.

## FACTUAL ALLEGATIONS

16.     As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

17.     Plaintiffs' careers in the modeling industry place a high degree of value on their

3

good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Diamond Dolls.

19.    In the case of each and every Plaintiff, such appearance was false.

20.    Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

***Plaintiffs' Backgrounds and Careers***

21.    Young is a model who has appeared in advertisements and catalogs for Shirley of Hollywood, has appeared in Adam & Eve commercials and has appeared on a numerous television programs, including *Entourage*.

22.    That we know of, Young is depicted in the photo in Exhibit "A" to promote Diamond Dolls on its Facebook page. This misappropriated Image of Young was intentionally altered to make it appear that Young was a stripper working at Diamond Dolls, or that she endorsed the Club.

23.    Young has never been employed at Diamond Dolls, has never been hired to endorse Diamond Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

4

24.     Swedberg is an American actress and model, *Playboy's* Playmate of the Month for April 2011, and Playmate of the Year for 2012.  She has appeared in numerous TV series, including: *Badass*, *Playboy's Beach House*, *Pauly Shore's Paulytic's*, and *Snake and Mongoose*

25.     That we know of, Swedberg is depicted in the photo in Exhibit "B" to promote Diamond Dolls on its Facebook page.  This misappropriated Image of Swedberg was intentionally altered to make it appear that Sweberg was a stripper working at Diamond Dolls, or that she endorsed the Club.

26.     Swedberg has never been employed at Diamond Dolls, has never been hired to endorse Diamond Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27.     Toth is an extremely successful model who was the September 2011 *Playboy* Playmate of the Month. Toth has also appeared in a variety of magazines including *Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, as well as appearing in countless other catalogs and publications. Toth's popularity and renown is evidence by the fact that she has over 2 million Facebook followers, over 700,000 Instagram followers, and over 100,000 Twitter followers.  In addition to her Toth's modeling work, she owns and maintains her own e-commerce site.

28.     That we know of, Toth is depicted in the photo in Exhibit "C" to promote Diamond Dolls on its Facebook page.  This misappropriated Image of Toth was intentionally altered to make it appear that Toth was a stripper working at Diamond Dolls, or that she endorsed the Club.

29.     Toth has never been employed at Diamond Dolls, has never been hired to endorse Diamond Dolls, has received no remuneration for Defendants' unauthorized use of her Image,

and has suffered, and will continue to suffer, damages as a result of same.

30.     Davalos is a model with a burgeoning career in the talent industry, and a tremendous Latin American and international following, with over 450,000 Instagram followers, and . She has over 175,000 Instagram followers and has a tremendous Latin American and international following with 250,000 Facebook followers.

31.     That we know of, Davalos is depicted in the photo in Exhibit "D" to promote Diamond Dolls on its Facebook page.  This misappropriated Image of Davalos was intentionally altered to make it appear that Davalos was a stripper working at Diamond Dolls, or that she endorsed the Club.

32.     Davalos has never been employed at Diamond Dolls, has never been hired to endorse Diamond Dolls, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Campos is a Brazilian model who has appeared in *Playboy*, *Astonish*, *Viva Glam*, *Bliss*, *Arizona Foothills* magazine, for which she was the cover model.   Campos has appeared in advertising campaigns for many well known companies, including Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, and Marisa Kenson, has served as a spokesmodel for My Body Journey, and has appeared in the feature film *Last Vegas*.

34.     That we know of, Campos is depicted in the photos in Exhibit "E" to promote Diamond Dolls on its Facebook page.  This misappropriated Image of Campos was intentionally altered to make it appear that Campos was a stripper working at Diamond Dolls, or that she endorsed the Club.

35.     Campos has never been employed at Diamond Dolls, has never been hired to

6

endorse Diamond Dolls, has received no remuneration for Defendants' unauthorized use of her

Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

36.     Upon information and belief, Defendants have operated Diamond Dolls during

the relevant time period, where it engages or has engaged in the business of selling alcohol and

food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

37.     Upon information and belief, and in furtherance of its promotion of Diamond

Dolls, Defendants own, operate and control Diamond Dolls social media accounts, including the

its Facebook, Twitter, and Instagram accounts.

38.     Defendants used the Diamond Dolls Facebook, Twitter, and Instagram accounts

to promote Diamond Dolls, and to attract patrons thereto.

39.     Defendants did this for their own commercial and financial benefit.

40.     Defendants have used, advertised, created, printed and distributed the Images of

Plaintiffs, as further described and identified above, in order to create the false impression with

potential clientele that these Plaintiffs either worked as a strippers at Diamond Dolls, or endorsed

same.

41.     Defendants used Plaintiffs' Images, and created the false impression that they

worked at or endorsed Diamond Dolls in order to receive certain benefits therefrom, including

but not limited to: monetary payments; increased promotional, advertising, marketing, and other

public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits,

proceeds, and income.

42.     As Defendants were at all times aware, at no point have any of the above-named

Plaintiffs ever been affiliated with or employed by Diamond Dolls, and at no point have any of

the Plaintiffs ever endorsed Diamond Dolls.

43.     All of Defendants' activities, including their theft of Plaintiffs' Images, and their alteration and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for its use of their Images.

44.     As such, Plaintiffs have never received any benefit for Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

45.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

46.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendants' Theft of Plaintiffs' Images***

47.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote their Club by and through various marketing and promotional mediums including, without limitation, Diamond Dolls Facebook and Instagram pages.

48.     Defendants showcased Plaintiffs' Images on Diamond Dolls social media pages in

order to create the false impression that Plaintiffs worked at the Club, or endorsed the Club.

49.     Defendants did so in order to attract clientele to the Club, promote the Club, and thereby generate revenue for Defendants.

50.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed the Club.

51.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each Plaintiff's Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

52.     At no point were any of the Plaintiffs ever affiliated with Diamond Dolls or Defendants.

53.     Each of Plaintiffs' Images was used without her consent.

54.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

55.     No Defendant ever obtained, either directly or indirectly, permission to use the Images of any Plaintiff.

56.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Clubs' Websites, Twitter, Facebook, or Instagram accounts.

57.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

58.     Upon information and belief, Defendants have taken the foregoing actions with

the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

59.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

61.     Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at Diamond Dolls, or endorsed Diamond Dolls.

62.     This was done to promote and attract clientele to Diamond Dolls, and thereby generate revenue for the Defendants.

63.     Thus, this was done in furtherance of Defendants' commercial benefit.

64.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, Diamond Dolls, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Diamond Dolls.

65.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Diamond Dolls.

66.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of Diamond Dolls, and the goods and services provided by Diamond Dolls.

67.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a

false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

68.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.     As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on Diamond Dolls social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Diamond Dolls, or endorsed Diamond Dolls.

70.     At all relevant times, the Diamond Dolls social media accounts were used and operated by Defendants' for advertising and trade purposes.

71.     The Diamond Dolls social media accounts were designed to attract business to the Club, and generate revenue for Defendants.

72.     Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

73.     At no point did Defendants ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their social media accounts.

74.     Defendants were at all relevant times aware that they never received any Plaintiff's permission or consent to use her Images on any social media account, or any other medium, in order to promote the Club.

75.     At no point did Defendants ever compensate Plaintiffs for their use of the Images.

76.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

11

77.     Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs have been damaged in an amount to be determined at trial.

78.     In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

79.     In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

**THIRD CAUSE OF ACTION**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

80.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

81.     Defendants operated Diamond Dolls social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

82.     Defendants published Plaintiffs' Images on Diamond Dolls social media accounts in order to create the false impression with the public that Plaintiffs were either strippers working at the Club, or endorsed the Club.

83.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

84.     As Defendants were at all times aware, Plaintiffs never worked at the Club, never endorsed the Club, and never had any affiliation with the Club.

85.     Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent, and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Club, or endorsed the Club.

86.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on the Diamond Dolls social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

87.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## DEMAND FOR JURY TRIAL

88.     Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through third causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       March 8, 2018

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
    John V. Golaszewski, Esq.
    1745 Broadway, 17th Floor
    New York, New York
    T: 855.267.4457
    F: 855.220.9626

*Attorneys for Plaintiffs*

14